# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-3590
_____

Nyynkpao Banyee

*Petitioner*

v.

Pamela Bondi, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 23, 2025
Filed: January 29, 2026
_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.
_____

BENTON, Circuit Judge.

Nyynkpao Banyee, a native and citizen of the Ivory Coast, petitions for review of the Board of Immigration Appeals' dismissal of his appeal from the Immigration Court, upholding his removal from the United States. Having jurisdiction under 8 U.S.C. § 1252, this court denies his petition.

In 2004, Banyee immigrated to the United States from the Ivory Coast as a child refugee. He became a lawful permanent resident in 2005. As an adult, he committed a string of crimes. Important for this petition, in 2018, Banyee was convicted of robbery under North Dakota Century Code § 12.1-22-01. Because he "brandished a gun" and menaced others in the course of committing a theft, his robbery was a Class B felony. *See* **N.D.C.C. § 12.1-22-01(2)**. He was sentenced to four years' imprisonment, with one year of probation.

In 2021, the Department of Homeland Security arrested Banyee, charging him with removability: under 8 U.S.C. § 1227(a)(2)(A)(ii) for two separate convictions of crimes involving moral turpitude; and 8 U.S.C. § 1227(a)(2)(A)(iii) for the state-robbery conviction. DHS believed that his robbery conviction was an aggravated felony for "attempted theft" as defined under 8 U.S.C. § 1101(a)(43)(G), (U).[1]

Banyee, in part, sought the discretionary relief of cancellation of removal for permanent residents under 8 U.S.C. § 1229b(a). To qualify for discretionary relief, Banyee could not be "convicted of any aggravated felony." **8 U.S.C. § 1229b(a)(3)**. He thus challenged DHS's labeling his state-robbery conviction as an aggravated felony.

At a removal hearing, the Immigration Judge found Banyee removable for the two moral-turpitude convictions, but eligible for cancellation of removal. His eligibility turned on the IJ's interpretation of the robbery statute. The IJ's interpretation focused on the theft-consolidation and theft-of-property statutes, N.D.C.C. §§ 12.1-23-01, -02—both of which encompass theft by deception. The IJ

---

[1]DHS initially alleged that the robbery conviction made him removable under 8 U.S.C. § 1101(a)(43)(F) for having been convicted of a "crime of violence" aggravated felony but replaced that charge with the attempted-theft charge after the Supreme Court's *Borden v. United States*, 593 U.S. 420, 429 (2021) decision. *See* **Banyee v. Garland**, 115 F.4th 928, 930 (8th Cir. 2024).

ruled that those statutes impute the same definition of "theft" into the robbery statute, thereby encompassing conduct (theft by fraud or deceit) beyond the federal generic definition of theft. The IJ ruled that the robbery statute was facially overbroad and ended the analysis there. Concluding Banyee was not convicted of an aggravated felony, the IJ granted him cancellation of removal.

DHS appealed to the BIA. The BIA disagreed with the IJ's interpretation of the robbery statute. It found the statute not overbroad, and ruled that Banyee must demonstrate a realistic probability that North Dakota applies its robbery statute to conduct beyond the generic definition of attempted theft. The BIA remanded, ordering the IJ to apply the realistic probability test.

On remand, the IJ found Banyee failed his burden of proving a realistic possibility that North Dakota would apply its robbery statute to conduct beyond the generic definition of attempted theft. The IJ found him statutorily ineligible for cancellation of removal. Banyee was ordered removed to the Ivory Coast. He appealed to the BIA. In 2024, it dismissed the appeal, upholding the IJ's order. Banyee petitions to review the final order of removal.

II.

"An alien is removable if he commits an 'aggravated felony at any time after admission' . . . ." **Thok v. Garland**, 74 F.4th 555, 559 (8th Cir. 2023), *quoting* **8 U.S.C. § 1227(a)(2)(A)(iii)**. This court reviews the BIA's removal order as a final agency decision. *See* **Nasrallah v. Barr**, 590 U.S. 573, 575 (2020). Ordinarily, this court has jurisdiction to review "a final order of removal." **Hanan v. Mukasey**, 519 F.3d 760, 763 (8th Cir. 2008), *quoting* **8 U.S.C. § 1252(a)(1)**. However, "for cases involving noncitizens who have committed any crime specified in 8 U.S.C. § 1252(a)(2)(C), federal law limits the scope of judicial review." **Nasrallah**, 590 U.S. at 576. *See* **8 U.S.C. § 1252(a)(2)(C)** ("[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . of

this title . . . .").  This court can consider only "constitutional and legal challenges to the final order of removal."  *Nasrallah*, 590 U.S. at 576.  Whether Banyee's North Dakota robbery conviction is an attempted-theft aggravated felony is a question of law, which this court reviews de novo.  *See Jima v. Barr*, 942 F.3d 468, 471–72 (8th Cir. 2019).

III.

The categorical approach determines whether a noncitizen's state-criminal conviction is an aggravated felony.  *See Borden v. United States*, 593 U.S. 420, 424 (2021); *Huynh v. Garland*, 102 F.4th 943, 944 (8th Cir. 2024).  The focus is "whether the elements of the statute of conviction meet the federal standard." *Borden*, 593 U.S. at 424.  Here, the issue is whether North Dakota's robbery statute "categorically fits within the generic definition of a corresponding aggravated felony"—attempted theft.  *See Huynh*, 102 F.4th at 944, *quoting Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013); **8 U.S.C. § 1101(a)(43)(G), (U)**.  "By 'generic,' we mean the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." *Moncrieffe*, 569 U.S. at 190.  The noncitizen's "actual conduct" is irrelevant in the comparison.  *Id*.

"Under the Immigration and Nationality Act (INA), individuals seeking relief from a lawful removal order shoulder a heavy burden."  *Pereida v. Wilkinson*, 592 U.S. 224, 227 (2021).  The INA requires an applicant for cancellation of removal to prove he has not been convicted of an aggravated felony.  *See* **8 U.S.C. §§ 1229b(a)(3)**, **1229a(c)(4)** ("An alien applying for relief or protection from removal has the burden of proof to establish that the alien satisfies the applicable eligibility requirements . . . ."); *Pereida*, 592 U.S. at 227 ("The INA expressly requires individuals seeking relief from lawful removal orders to prove all aspects of their eligibility. That includes proving they do not stand convicted of a disqualifying criminal offense.").  If the "least of the acts criminalized" by North Dakota's robbery statute "are encompassed by the generic federal offense," Banyee

-4-

is ineligible for cancellation of removal. *See **Huynh***, 102 F.4th at 944, *quoting **Moncrieffe***, 569 U.S. at 191. However, if the state statute is broader than the generic federal offense, he is eligible for such relief. *See **Huynh***, 102 F.4th at 945; ***Thok***, 74 F.4th at 559 ("A state crime that is broader than the generic federal crime is not a categorical match and so cannot serve as a predicate offense for removal.").

This court recognizes two views of the categorical approach. ***Peh v. Garland***, 5 F.4th 867, 871 (8th Cir. 2021). First, the *Mowlana* view: if the state statute allows for "fanciful hypotheticals" or "theoretical possibilities," then the court looks beyond the plain language of the statute, requiring the noncitizen to demonstrate "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." ***Id***. (internal quotation marks omitted), *analyzing **Mowlana v. Lynch***, 803 F.3d 923, 925 (8th Cir. 2015), *quoting **Moncrieffe***, 569 U.S. at 191. Demonstrating a realistic probability requires citation to relevant cases. *See **Gonzales v. Duenas-Alvarez***, 549 U.S. 183, 193, (2007) ("To show that realistic probability, an offender . . . . must at least point to *his own case or other cases* in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." (emphasis added)); ***Armenta-Lagunas v. Holder***, 724 F.3d 1019, 1024–25 (8th Cir. 2013) (holding the petitioner did not satisfy the realistic probability test when he presented only hypotheticals as proof of nongeneric application); ***Mowlana***, 803 F.3d at 925 (finding the "realistic probability" inquiry applies to both state- and federal-law offenses).

Second, the *Gonzalez* view: if "the statute's reach is clear on its face, [then] the realistic probability is evident from the language of the statute itself" and "an alien need not demonstrate *any* likelihood that the State actually prosecutes cases under hypothetical scenarios that come within the plain language of the statute." ***Peh***, 5 F.4th at 871–72 (internal quotation marks omitted) (emphasis added), *quoting **Gonzalez v. Wilkinson***, 990 F.3d 654, 660 (8th Cir. 2021).

Banyee invokes the *Gonzalez* view, arguing that the robbery statute is unambiguously overbroad, eliminating his burden to show a realistic probability that

North Dakota would apply it to thefts by deception.  Thus, the issue is whether the robbery statute is unambiguously broader than the generic definition of attempted theft.

IV.

The generic definition of theft is "taking of property or an exercise of control over property *without consent* with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." ***Gonzales***, 549 U.S. at 189 (emphasis added).  *See also* ***Ahmed v. Sessions***, 890 F.3d 719, 721 (8th Cir. 2018), *quoting* ***Matter of Garcia-Madruga***, 24 I. & N. Dec. 436, 440–41 (BIA 2008) (collecting cases).  North Dakota's robbery statute says, "A person is guilty of robbery if, *in the course of committing a theft*, he inflicts or attempts to inflict bodily injury upon *another* or threatens or menaces *another* with imminent bodily injury."  **N.D.C.C. § 12.1-22-01(1)** (emphasis added).  "An act shall be deemed '*in the course of committing a theft*' if it occurs in an *attempt* to commit theft, whether or not the theft is successfully completed, or in immediate flight from the commission of, or an unsuccessful effort to commit, the theft." **§ 12.1-22-01(3)(a)** (emphasis added).

North Dakota's theft-of-property statute says:

A person is guilty of theft if he:

> 1. Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another with intent to deprive the owner thereof;

> 2. Knowingly obtains the property of another by *deception* or by threat with intent to deprive the owner thereof, or intentionally deprives another of his property by *deception* or by threat; or

> 3. Knowingly receives, retains, or disposes of property of another which has been stolen, with intent to deprive the owner thereof.

**§ 12.1-23-02** (emphasis added). North Dakota's theft-consolidation statute says:

> Conduct denominated theft in sections *12.1-23-02 to 12.1-23-04* constitutes a single offense designed to include the separate offenses heretofore known as larceny, stealing, purloining, embezzlement, obtaining money or property by false pretenses, extortion, blackmail, fraudulent conversion, receiving stolen property, misappropriation of public funds, swindling, and the like.

**§ 12.1-23-01(1)** (emphasis added).


## V.


Banyee argues that his robbery conviction is not an attempted-theft aggravated felony.

"Interpreting state statutes, this court applies that state's rules of statutory construction." ***Behlmann v. Century Sur. Co.***, 794 F.3d 960, 963 (8th Cir. 2015). North Dakota, in interpreting statutes, "give[s] words their plain, ordinary and commonly understood meaning." ***Kroschel v. Levi***, 866 N.W.2d 109, 113 (N.D. 2015) (citation omitted). The State "consider[s] the ordinary sense of statutory words, the context in which they were enacted, and the purpose which prompted the enactment." ***Id***. at 113–14 (citation omitted). "A statute is ambiguous when it is susceptible to differing, but rational, meanings." ***State v. Long***, 950 N.W.2d 178, 181 (N.D. 2020) (citation omitted). When a statute is ambiguous, the State permits a court to "reference extrinsic aids" in its interpretation. ***Id***.


### A.


This court first considers Banyee's argument that the robbery statute does not include attempted theft under 8 U.S.C. § 1101(a)(43)(G), (U). *See* **8 U.S.C. § 1101(a)(43)(G)** ("[A] theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year . . . ." (footnote omitted)), **(U)** ("[A]n attempt or conspiracy to commit an offense

described in this paragraph."). "A person is guilty of criminal attempt if, acting with the kind of culpability otherwise required for commission of a crime, he intentionally engages in conduct which, in fact, constitutes a substantial step toward commission of the crime." *State v. Hartson*, 6 N.W.3d 639, 643 (N.D. 2024), *quoting* **N.D.C.C. § 12.1-06-01(1)**. "A 'substantial step' is any conduct which is strongly corroborative of the firmness of the actor's intent to complete the commission of the crime." **N.D.C.C. § 12.1-06-01(1)**. Attempted theft must be a lesser included offense of robbery for Banyee to have been convicted of the aggravated felony. *See* **N.D. R. Crim. P. 31(c)** ("A defendant may be found guilty of an offense necessarily included in the offense charged."); **Fed. R. Crim. P. 31(c)(1)**; *State v. McKing*, 593 N.W.2d 342, 343 (N.D. 1999) (requiring a defendant requesting a lesser-included-offense instruction to prove such offense is in fact included in the offense charged). "A lesser offense is necessarily included in a greater offense if it is impossible to commit the greater without also committing the lesser." *State v. Carlson*, 559 N.W.2d 802, 810 (N.D. 1997). Relying on *State v. McKing*, Banyee argues that attempted theft is not an included offense of robbery. *See McKing*, 593 N.W.2d at 343.

The Supreme Court of North Dakota holds that "*theft* is not a lesser included offense of robbery." *Id*. at 344 (emphasis added). Using this holding, Banyee suggests that *attempted* theft is also not an included offense. In *McKing*, the court based its interpretation of the robbery statute on the *Working Papers of the National Commission on the Reform of Federal Criminal Laws* (1970-71). *Id*. The drafters of the *Working Papers* emphasized the "in the course of committing theft" element of robbery, stating it turned the crime's focus to the use of force rather than the successful taking of property. **II Working Papers of the Nat'l Comm'n on the Reform of Fed. Crim. L.** 905 (1970). True, a person in North Dakota can commit a robbery without committing a theft. *McKing*, 593 N.W.2d at 344. *See* **Working Papers** at 905. However, a person cannot commit a robbery without *attempting* theft. *See* **N.D.C.C. § 12.1-22-01(3)(a)**; *McKing*, 593 N.W.2d at 344. The plain language of the robbery statute requires the use of force or threat of force on another during "an *attempt* to commit theft" or "in immediate flight from . . . an *unsuccessful effort to commit*[] the theft." *See* **N.D.C.C. § 12.1-22-01(1), (3)(a)** (emphasis

added); ***McKing***, 593 N.W. 2d at 344. The robbery statute thus includes attempted theft under 8 U.S.C. § 1101(a)(43)(G), (U).

B.

Banyee argues the robbery statute is facially broader than the generic definition of theft. He focuses on the generic definition's "without consent" requirement, which excludes consensual thefts. *See **Matter of Koat***, 28 I. & N. Dec. 450, 453 (BIA 2022) (stating the definition of "[g]eneric theft under section 101(a)(43)(G) of the" INA "does not encompass crimes committed by fraud or deceit"); ***Garcia-Madruga***, 24 I. & N. Dec. at 439 (stating the "key and controlling distinction between" fraud and theft is "the 'consent' element"). Banyee claims that the robbery statute unambiguously encompasses thefts by deception, putting the "least of the acts criminalized" beyond the generic offense. *See **Huynh***, 102 F.4th at 944.

He first argues that the robbery statute shares the same definition of "theft" as the theft-consolidation and theft-of-property statutes—both of which encompass theft by deception. **N.D.C.C. §§ 12.1-22-01**, **12.1-23-01**, **12.1-23-02**. The robbery statute does not define "theft," and its plain language incorporates neither statute. *See* **§ 12.1-22-01**. The theft-consolidation statute governs only "[c]onduct denominated [as] theft in sections 12.1-23-02 to 12.1-23-04." **§ 12.1-23-01(1)**. It makes no reference to (1) the robbery statute or (2) any section except the three cited theft provisions and the enumerated theft crimes (robbery is not one of them). *See id*. The theft-of-property statute similarly makes no reference to the robbery statute or claim any applicability beyond its section. *See* **§ 12.1-23-02**. Banyee's argument is also inconsistent with the statutes' purpose. *See **State v. Pulkrabek***, 900 N.W.2d 798, 800 (N.D. 2017) (stating the purpose of the theft-consolidation statute is to unify "the numerous different types of thievery, i.e., false pretenses, larceny, and possession of stolen goods, into the single crime of theft," reducing judicial inefficiency); **Working Papers** at 914 ("Such diversity is an open invitation to the technical defense—to the argument that 'the indictment charges stealing but what I

was really doing was purloining and therefore my conviction should be reversed.'"); *State v. Bourbeau*, 250 N.W.2d 259, 263 (N.D. 1977) (stating "[t]he overlap among the three paragraphs of [the theft-of-property statute] is intended to insure that everything which is now theft by any name will be covered" (internal quotation marks omitted)), *quoting* **Nat'l Comm'n on Reform of Fed. Crim. L., Final Rep. § 1732**, comment at 206–207 (1971); *McKing*, 593 N.W. 2d at 344 (holding the focus of robbery is on the use or threat of force, and that it does not include theft as "a lesser included offense"). The theft-consolidation and theft-of-property statutes do not make the robbery statute *unambiguously* broader than the generic definition of theft.

Banyee next contends that the robbery statute's use of "another" makes it unambiguously overbroad. He argues that "another" encompasses the use or threats of force against a third party to dispossess a separate property owner, resulting in a consensual taking. The robbery statute does not define "another." *See* **N.D.C.C. § 12.1-22-01**. Banyee references the theft-of-services statute, claiming that because it uses "another" to refer to third parties, so too must the robbery statute. *See* **§ 12.1-23-03**. Like before, neither statute references the other or claims applicability outside their chapter of the Criminal Code. *See id*; **§ 12.1-22-01**. He then cites the briefs in three North Dakota business-robbery cases, claiming the force directed at employees to dispossess businesses of their property is a clear example of theft by deception. *See generally* Brief for Appellee, *State v. Allen*, 704 N.W.2d 573 (N.D. 2005) (per curiam) (No. 20050102), 2005 WL 4155996; Brief for Appellant, *State v. Nur*, 891 N.W. 2d 779 (N.D. 2017) (per curiam) (No. 20160257), 2016 WL 8114769; Brief for Appellee, *State v. Smith*, 832 N.W.2d 334 (N.D. 2013) (per curiam) (No. 20120430), 2013 WL 1949791. These are not clear examples. Forceful takings where "the victim is not aware of the crime, and no conduct is compelled from [them]," is not within the scope of robbery. **Working Papers** at 905. These cases involve threats of violence directed at employees to accomplish theft of property. The owners were unaware of the robberies as they occurred, and no conduct was compelled from them. Also, the employees were not third parties; they were victims of robbery. *See* **N.D.C.C. § 12.1-22-01** (stating robbery requires

-10-

only (1) the infliction or attempted infliction of "bodily injury upon another" or the threatening or menacing of "another with imminent bodily injury" (2) "in the course of committing a theft"); *McKing*, 593 N.W. 2d at 344 (stating that, for robbery, "the emphasis is on the use of force, rather than the successful taking of property"), *quoting* **Working Papers** at 905; *State v. Clinkscales*, 536 N.W.2d 661, 663–65 (N.D. 1995) (finding the store clerk the victim of a robbery even though the robber stole only the store's property). Nothing about these takings was "consensual," and they certainly were not achieved through fraud or deceit. *See* **Working Papers** at 1043 ("A typical robbery combines elements of both property and personal crime because the robber uses personal force rather than stealth or *trickery* to obtain the property of another unlawfully." (emphasis added)). Finally, Banyee focuses on the *Working Papers*' examples of robbers taking hostages to steal from others. *See id*. at 904–06. However, these hypotheticals also do not clearly support his interpretation of "another," as ambiguity exists about the "consent" in the taking. *See id*. The robbery statute's use of "another" does not *unambiguously* encompass theft by deception.

Banyee's arguments fail.

VI.

The robbery statute on its face does not unambiguously criminalize conduct beyond the generic definition of attempted theft. Its reach is ambiguous and amorphous. The statute allows for "fanciful hypotheticals" or "theoretical possibilities," as Banyee's arguments show. Thus, the *Mowlana* view, not *Gonzalez* view, applies. *See* **Peh**, 5 F.4th at 871. *Cf. Gonzalez*, 990 F.3d at 660 ("[W]hen the statute's reach is clear on its face, it takes no 'legal imagination' or 'improbable hypotheticals' to understand how it may be applied and to determine whether it covers conduct an analogous federal statute does not.").

Applying the *Mowlana* view, Banyee "must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special

-11-

(nongeneric) manner for which he argues." *See Gonzales*, 549 U.S. at 193. He can do neither. Since Banyee cannot satisfy his burden of demonstrating that North Dakota would apply its robbery statute to thefts by deception, his state-robbery conviction is an attempted-theft aggravated felony. *See Moncrieffe*, 569 U.S. at 191, 206; *Mowlana*, 803 F.3d at 925; *Peh*, 5 F.4th at 871; **8 U.S.C. § 1101(a)(43)(G), (U)**.

Banyee is statutorily ineligible for cancellation of removal.

VII.

Banyee reiterates his objections to his immigration detention to "preserve" an issue that this court already decided. *See Banyee v. Garland*, 115 F.4th 928, 930–31 (8th Cir. 2024). This court cannot re-consider this claim. *See Rutherford v. Kessel*, 560 F.3d 874, 881 (8th Cir. 2009) ("The doctrine of res judicata bars both parties and their privies from relitigating an issue already decided by a prior court."); *Browne v. Thorn*, 272 F. 950, 951 (8th Cir. 1921), *aff'd*, 260 U.S. 137 (1922) ("A legal proposition once considered and decided in a given cause by an appellate court may not be again questioned in that court on a subsequent writ or appeal to review a subsequent trial of the same case on the same issues and evidence."); *Thompson v. United States*, 872 F.3d 560, 565 (8th Cir. 2017) ("Because this issue has been 'raised and decided,' it cannot be relitigated in these proceedings, and we decline to revisit our prior decision.").

\* \* \* \* \* \* \*

The petition for review is denied.

_____

-12-